# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 79

APRIL TERM, A.D. 2024

July 24, 2024

JENNIFER ELIZABETH LYNCH a/k/a
JENNIFER ELIZABETH STRACENER,

Appellant
(Defendant),

v.

S-23-0271

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*

*Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel. Argument by Ms. Cooper.*

*Representing Appellee:*

*Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General. Argument by Ms. Rude.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Jennifer Lynch pled guilty to one count of misdemeanor endangering children and one count of felony child abuse.  Ms. Lynch appeals only her child abuse conviction, claiming there was no factual basis to support that charge, and the district court abused its discretion when it denied her post-sentence motion to withdraw her guilty plea.  We reverse and remand.

## ISSUES

[¶2]    Ms. Lynch raises two issues, which we rephrase as follows:

> I.    Did the district court err when it accepted Ms. Lynch's guilty plea to felony child abuse without obtaining a sufficient factual basis?
>
> II.   Did the district court err when it denied Ms. Lynch's post-sentence motion to withdraw her guilty plea?

Because we find the first issue requires reversal, we will not address her second issue.

## FACTS

[¶3]    On the evening of December 6, 2022, Ms. Lynch and her wife, Tabitha, brought their five children to the emergency room at Memorial Hospital of Carbon County to be treated for respiratory infections.  Although the family was initially placed in one room, Tabitha asked to be separated from Ms. Lynch because she wanted to end their relationship.  Tabitha and her three sons, MT, NL, and SL, were placed in one room, while Ms. Lynch and her two daughters,[1] JB and SB, were placed in another room.  Once separated, Tabitha informed the medical staff that Ms. Lynch had been putting Seroquel in MT's bottle to help him sleep.  Ms. Lynch confirmed she had been giving Seroquel to some of the children.  After receiving this information, medical staff contacted the Rawlins Police Department and the Department of Family Services.

[¶4]    Ms. Lynch spoke with law enforcement and admitted to giving her prescription Seroquel to MT and JB.  Ms. Lynch said JB had trouble sleeping, and the Melatonin recommended by her pediatrician proved to be ineffective.  Ms. Lynch explained JB had other health issues, including obesity and sleep apnea, and JB cannot lay flat when she sleeps. Due to these sleeping issues, Ms. Lynch and her mother, Jo Peden, would crush up

---

[1] JB and SB are the biological children of Ms. Lynch's adult daughter and co-defendant, Jessica Buell.  Ms. Buell told the investigating officers she gave custody of these children to Ms. Lynch through a court case in Louisiana.  For simplicity, we will refer to JB and SB as Ms. Lynch's daughters.

1

the Seroquel tablets, place some of the powder into a bottle of milk, and give it to JB to drink. Ms. Lynch also stated MT has ADHD, and Tabitha asked her to give him some of the Seroquel to calm him because she did not like getting up with him. Ms. Lynch and Ms. Peden used the same process to administer the Seroquel to MT.

[¶5] Officers searched Ms. Lynch's home, which she shared with Tabitha and the children, Ms. Peden, Ms. Lynch's adult daughter, Jessica Buell, and a family friend, Billy Aden. Ms. Peden showed the officers Ms. Lynch's Seroquel prescription, which was kept in a safe in Ms. Peden's room, and the pill crusher they used to crush the tablets. Officers also discovered Ms. Buell and Mr. Aden had been using methamphetamine in the basement of the residence.

[¶6] Ms. Lynch, Ms. Peden, Ms. Buell, and Mr. Aden were all arrested and charged in a joint information with a total of fourteen counts. Ms. Lynch was charged with one felony count of aggravated assault and battery, and four misdemeanor counts of endangering children. She pled not guilty to these charges. Ms. Lynch later filed a notice of intent to change her plea pursuant to a plea agreement. In exchange for pleading guilty to one amended count of felony child abuse and one misdemeanor count of endangering children, the State agreed to dismiss the remaining counts and recommend a sentence of five to eight years in prison, suspended in favor of three years of probation on the child abuse count, and ninety days in jail on the endangering children count with credit for time served. The State filed an amended information in accordance with the terms of this plea agreement. Rather than filing a new affidavit of probable cause to support the child abuse charge, the State relied on the original affidavit filed in December of 2022.

[¶7] The district court held a change of plea hearing in May 2023. After reciting the terms of the plea agreement, the district court engaged in a colloquy with Ms. Lynch to ensure she was intelligently, freely, and voluntarily changing her plea. The district court advised Ms. Lynch of the rights she would be waiving if she changed her plea. The district court also advised Ms. Lynch that it was not bound by the plea agreement, and if the court rejected the agreement, she could receive the maximum sentence. The district court never went over the elements of the child abuse count with Ms. Lynch prior to asking her for her plea to the amended charge of child abuse.[2] After Ms. Lynch entered her guilty pleas to

---

[2] Rule 11(b)(1) of the Wyoming Rules of Criminal Procedure requires trial courts to advise defendants about "[t]he nature of the charge to which the pleas is offered . . ." prior to accepting their guilty or no contest plea. There is "no hard and fast rule regarding how much information is necessary to explain the nature of a charge[,]" and in a simple case a district court "may discharge this obligation by simply reading the indictment or information to the defendant and permitting [her] the opportunity to ask questions." *Williams v. State*, 2015 WY 100, ¶ 16, 354 P.3d 954, 960 (Wyo. 2015) (internal citations omitted). Depending on the circumstances surrounding the plea agreement, a district court may also be required to explain more complex elements or legal terms. *Id.* (citations omitted). In this case, the district court never read the information or explained any of the elements to Ms. Lynch before accepting her pleas. However, Ms. Lynch did not raise the district court's lack of compliance with W.R.Cr.P. 11(b)(1) as an issue on appeal, so we will not address it.

both the child abuse and endangering children charges, the district court asked her to explain "what occurred that [made her] guilty of these charges." The following exchange occurred:

> THE DEFENDANT: I supplied the drug Seroquel to my mother, and my mother was able to give the drug out to the kids.
>
> THE COURT: And did you know in supplying that Seroquel to your mother that the intent was to give it to the children?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And whose medication was it?
>
> THE DEFENDANT: It's mine.
>
> THE COURT: And did that cause some type of injury to the children?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Can you describe the injury[?]
>
> THE DEFENDANT: I know that [MT] is delayed in some ways. I know that [JB] is -- she wasn't getting the healthcare that she needed.
>
> THE COURT: And were you responsible for her care?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you were responsible to make sure that she wasn't given Seroquel and to give the appropriate healthcare?
>
> THE DEFENDANT: Yes, ma'am.

[¶8]    The district court asked the State if it believed that was a sufficient factual basis to support Ms. Lynch's plea. The State supplemented the factual basis as follows:

> [THE PROSECUTOR:] Your Honor, the State would supplement during the interview with law enforcement, Ms. Lynch, admitted that she had provided the Seroquel knowing

3

her mother had put it into the bottle, given it to Ms. Lynch, who then provided it to the children. I do believe that's an important distinction than just making a prescription available to a person to give.

Further, Your Honor, the State's evidence would be that [JB] suffers from some severe medical conditions, including sleeping problems, breathing problems. By providing the Seroquel, it was an additional suppressant to her ability to breathe, which was essentially forcing her to go to sleep, despite those medical conditions. The State would supplement that that was the physical injury in this case.

Thank you.

THE COURT: Ms. Lynch, did you provide the children with bottles knowing they had Seroquel in them, that your mother had put Seroquel in them?

THE DEFENDANT: Yes, ma'am.

THE COURT: So you knowingly gave these children Seroquel?

THE DEFENDANT: Yes, ma'am.

THE COURT: And then would you agree with the State's recitation of the injuries to [JB]?

THE DEFENDANT: To [JB], yes, ma'am.

The district court found there was a sufficient factual basis and accepted Ms. Lynch's pleas.

[¶9] At the sentencing hearing, the district court found the plea agreement was inappropriate, and Ms. Lynch was not a good candidate for probation. For the child abuse count, the district court sentenced Ms. Lynch to nine-to-ten years in prison. For the endangering children charge, the district court sentenced Ms. Lynch to 25 days in jail with credit for the 25 days she had already served. Ms. Lynch timely appealed the judgment and sentence.

[¶10] Approximately one week after Ms. Lynch filed her notice of appeal, she filed a pro se pleading which the district court interpreted as a combined post-sentence motion to withdraw her guilty plea and a motion for a sentence reduction. This pleading made vague

4

allegations against Ms. Lynch's trial counsel, asserted Tabitha should also have been charged, claimed she only took the plea in order to get the case over with, declared she now wanted to assert her right to a trial, and complained about the length of her sentence. Ms. Lynch asked to be placed on probation. The district court denied both of Ms. Lynch's motions.

## STANDARD OF REVIEW

[¶11] Ms. Lynch argues there was an insufficient factual basis for the district court to accept her guilty plea. When a defendant lodges an objection to the factual basis before the trial court, we apply the harmless error standard, but when no objection is made, we apply the plain error standard. *See Nguyen v. State*, 2013 WY 50, ¶ 8, 299 P.3d 683, 686 (Wyo. 2013) (citing *United States v. Vonn*, 535 U.S. 55, 73–74, 122 S. Ct. 1043, 1054, 152 L. Ed. 2d 90 (2002)). Ms. Lynch moved to withdraw her guilty plea. However, she did so for reasons other than a lack of a sufficient factual basis. Because Ms. Lynch did not object to the factual basis before the trial court, we apply a plain error standard of review. *Williams v. State*, 2015 WY 100, ¶ 11, 354 P.3d 954, 959 (Wyo. 2015) (citing *Duke v. State*, 2009 WY 74, ¶ 22, 209 P.3d 563, 571 (Wyo. 2009)).

[¶12] "Plain error occurs when the alleged error: '(1) clearly appears in the record; (2) clearly and obviously violates a clear and unequivocal rule of law; and (3) affects a defendant's substantial right to [her] material prejudice. Failure to establish each element precludes a finding of plain error.'" *Delarosa v. State*, 2023 WY 22, ¶ 6, 525 P.3d 1024, 1026 (Wyo. 2023) (quoting *Beeson v. State*, 2022 WY 86, ¶ 6, 512 P.3d 986, 989 (Wyo. 2022)). A plain error analysis requires the Court to conduct a twofold record review. When determining whether the district court violated a clear and unequivocal rule of law by accepting a guilty plea without a sufficient factual basis under the second plain error prong, we only consider "the information in the record at the time the plea was accepted." *Mellott v. State*, 2019 WY 23, ¶ 28, 435 P.3d 376, 387 (Wyo. 2019) (quoting *Nguyen*, ¶ 19, 299 P.3d at 689); *see also Williams*, ¶¶ 22–26, 354 P.3d at 962–63. However, when deciding if the defendant's substantial rights were affected under the third plain error prong, we may consider the entire record to determine whether there is a sufficient factual basis to support the guilty plea. *Delarosa*, ¶¶ 18–19, 525 P.3d at 1030 (quoting *Nguyen*, ¶¶ 19–20, 299 P.3d at 689). "Whether a court obtained a sufficient factual basis for a guilty plea goes to the voluntariness of the plea which we review de novo." *Reid v. State*, 2021 WY 121, ¶ 9, 497 P.3d 464, 465–66 (Wyo. 2021) (citing *Steffey v. State*, 2019 WY 101, ¶ 17, 449 P.3d 1100, 1105 (Wyo. 2019)).

## DISCUSSION

[¶13] Guilty pleas are governed by Rule 11 of the Wyoming Rules of Criminal Procedure (W.R.Cr.P.). *Delarosa,* ¶ 8, 525 P.3d at 1027. We require strict adherence to the rule. *Id.* (quoting *Maes v. State*, 2005 WY 70, ¶ 8, 114 P.3d 708, 710 (Wyo. 2005)). Pursuant to

W.R.Cr.P. 11(f), a district court should not accept a guilty plea "without making such inquiry as shall satisfy it that there is a factual basis for the plea." This inquiry protects "a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that [her] conduct does not actually fall within the charge." *Delarosa,* ¶ 8, 525 P.3d at 1027 (quoting *Beeson*, ¶ 8, 512 P.3d at 989). "A sufficient inquiry includes a determination that the defendant understood [her] conduct, in light of the law, to be criminal." *Beeson*, ¶ 8, 512 P.3d at 990 (quoting *Sami v. State*, 2004 WY 23, ¶ 9, 85 P.3d 1014, 1017 (Wyo. 2004)).

[¶14] Because we have a transcript of the change of plea hearing, the factual basis appears in the record. The first prong of the plain error test is met. We turn to the other two prongs: whether the district court violated a clear and unequivocal rule of law; and whether Ms. Lynch's rights were materially prejudiced.

**Violation of a Clear and Unequivocal Rule of Law**

[¶15] A district court violates a clear and unequivocal rule of law if it accepts a guilty plea without establishing a sufficient factual basis exists that the defendant committed the charged crime. *Delarosa,* 2023 WY 22, ¶ 9, 525 P.3d at 1027 (citing *Nguyen*, 2013 WY 50, ¶ 17, 299 P.3d at 688). To determine if there is a sufficient factual basis under W.R.Cr.P. 11(f), "we compare the elements of the charged offense to the facts admitted by the defendant and inferences arising from those facts." *Id.* (quoting *Beeson*, 2022 WY 86, ¶ 7, 512 P.3d at 989).

> The factual basis for accepting a plea may be inferred from circumstances surrounding the crime and need not be established only from the defendant's statements. W.R.Cr.P. 11 does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty nor does it require complete descriptions of the elements.

*Id.* (quoting *Beeson*, ¶ 7, 512 P.3d at 989). However, a sufficient factual basis does require evidence to satisfy all elements of the charged crime. *Mellott*, 2019 WY 23, ¶ 28, 435 P.3d at 387. The district court must be satisfied from its factual inquiry of the defendant that she "possessed an understanding of the law and its relation to the facts of [her] case." *Williams*, 2015 WY 100, ¶ 21, 354 P.3d at 962 (citing *Peper v. State*, 768 P.2d 26, 29 (Wyo. 1989)).

[¶16] To convict Ms. Lynch of child abuse, the State had to prove she was a person who was responsible for a child's welfare, and she intentionally or recklessly inflicted physical injury on that child. Wyo. Stat. Ann. § 6-2-503(b) (LexisNexis 2023). Physical injury is defined as: "any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with

6

reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition[,]" "excluding reasonable corporal punishment." Wyo. Stat. Ann. § 14-3-202(a)(ii)(B) (LexisNexis 2023); Wyo. Stat. Ann. § 6-2-503(b)(i).

[¶17]   Ms. Lynch contests the factual basis for the physical injury element.  She asserts the affidavit of probable cause contained language attesting Seroquel could cause serious bodily injury, which was an element of the original aggravated assault and battery charge, but it failed to demonstrate any physical injury actually occurred.  Ms. Lynch claims the only "actual harm" the State proved JB suffered was "forced sleep," which does not qualify as a physical injury under the statute.  The State asserts the physical injury to JB was "respiratory depression," which was established through the prosecutor's statements at the change of plea hearing.  The State further asserts Ms. Lynch acknowledged the Seroquel suppressed JB's ability to breathe, and this acknowledgment "along with the reasonable inferences that can be drawn from the medical information contained in the affidavit of probable cause, provides a factual basis for [Ms.] Lynch's plea."

[¶18]   The State relies on our decision in *Sanderson v. State*, 2007 WY 127, 165 P.3d 83 (Wyo. 2007), to support its position there was a sufficient factual basis in this case.  In *Sanderson*, we found central nervous system depression and respiratory depression could constitute the impairment of a bodily organ, which is a type of physical injury contemplated by the child abuse statute. *Id.* at ¶ 47, 165 P.3d at 96.  This case is distinguishable from *Sanderson*.  First, in *Sanderson* we were tasked with deciding whether there was sufficient evidence to support the jury's verdict regarding child abuse. *Id.* at ¶ 43, 165 P.3d at 95.  When making this determination, we have a "mandate to draw all reasonable inferences in favor of the jury's verdict." *Id.* at ¶ 46 n.3, 165 P.3d at 95 n.3.  We do not substitute our judgment for that of the jury, and we instead "determine whether a quorum of reasonable and rational individuals would, or even could, have found the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at ¶ 43, 165 P.3d at 95 (quoting *Rawle v. State*, 2007 WY 59, ¶ 21, 155 P.3d 1024, 1030 (Wyo. 2007)).  Here, we are tasked with deciding whether the district court accepted Ms. Lynch's plea without first obtaining a sufficient factual basis. *Delarosa*, 2023 WY 22, ¶ 9, 525 P.3d at 1027 (citing *Nguyen*, 2013 WY 50, ¶ 17, 299 P.3d at 688).  Through that lens, we must determine whether Ms. Lynch understood the nature of the child abuse charge and that her conduct fell within that charge. *Id.* at ¶ 16, 525 P.3d at 1030.

[¶19]   Second, the evidence in this case is different from that presented in *Sanderson*.  In *Sanderson*, the defendant placed a rag soaked with starter fluid over his two children's faces and forced them to inhale the fumes. *Id.* at ¶ 5, 165 P.3d at 87.  After inhaling the fumes, one child reported impaired vision, dizziness, nausea, and head pain, after which she passed out. *Id.* at ¶ 46, 165 P.3d at 95.  The other child also experienced light headedness, dizziness, passed out, and was so physically ill she was unable to go to school that day. *Id.*, 165 P.3d at 95–96.  In addition to this testimony, the State presented a medical expert who testified about the variety of health problems starter fluid could cause,

7

"including central nervous system depression leading to respiratory depression." *Id.* at ¶ 47, 165 P.3d at 96. This expert then testified the symptoms the victims reported were consistent with central nervous system depression. We found the evidence was sufficient to allow the jury to conclude Mr. Sanderson caused a physical injury in the nature of an impairment to a bodily organ under Wyoming Statute § 14–3–202(a)(ii)(B). *Id.*

[¶20] In this case, at the time the district court accepted Ms. Lynch's plea, there was no evidence in the record that any of the harms that could potentially be caused by Seroquel actually occurred. The affidavit alleged Seroquel could increase JB's risk for sleep apnea complications, and she could experience more frequent and longer breathing interruptions, increased blood pressure, increased hormone levels, and cardiovascular issues. However, the affidavit never states any of those harms actually occurred. The only evidence of actual harm came from the prosecutor's statements at the change of plea hearing. According to the prosecutor, the Seroquel acted as "an additional suppressant" and forced JB to sleep in spite of her health conditions. There is no evidence in the record to show JB experienced longer breathing interruptions, increased blood pressure, increased hormone levels, or cardiovascular issues as a result of depressed respirations or forced sleep. The factual basis establishes only that Ms. Lynch gave JB a substance that acted as an additional respiratory suppressant that caused her to sleep. Unlike *Sanderson*, there is no evidence that the Seroquel harmed JB in any way. The Court cannot infer from the factual basis that Ms. Lynch inflicted a physical injury on JB as required by Wyoming Statutes § 6-2-503(b) and § 14-3-202(a)(ii)(B). Without notice as to what physical injury actually occurred, there is no way Ms. Lynch could have understood whether her conduct fell within the charge when she pled guilty to child abuse. The district court violated a clear and unequivocal rule of law when it accepted Ms. Lynch's guilty plea without having a sufficient factual basis she committed the charged crime of child abuse under Wyoming Statute § 6-2-503(b).

**Prejudice**

[¶21] We now turn to whether the district court's violation of a clear and unequivocal rule of law materially prejudiced Ms. Lynch's substantial rights. *Delarosa*, 2023 WY 22, ¶ 6, 525 P.3d at 1026 (quoting *Beeson*, 2022 WY 86, ¶ 6, 512 P.3d at 989). Although a district court errs if it accepts a guilty plea without first establishing a sufficient factual basis, a defendant is not prejudiced if the entire record provides a sufficient factual basis to support the guilty plea. *Nguyen*, 2013 WY 50, ¶ 19, 299 P.3d at 689 (citing *United States v. Landeros–Lopez*, 615 F.3d 1260, 1263–64 (10th Cir. 2010)). We must determine if the entire record, including the presentence investigation report (PSI), contains information to establish the physical injury element of the offense. *See Delarosa,* ¶¶ 18–19, 525 P.3d at 1030 (quoting *Nguyen*, ¶¶ 19–20, 299 P.3d at 689). We conclude that it does not.

[¶22] There is no victim impact statement in the PSI setting forth information about any harm the Seroquel caused to JB. There is no supplemental medical information regarding breathing interruptions, increased blood pressure, increased hormone levels, or

cardiovascular issues.  Because the record contains no additional information regarding the physical injury element, Ms. Lynch suffered material prejudice when the district court sentenced her based on her guilty plea without obtaining a sufficient factual basis. *Delarosa*, ¶ 20, 525 P.3d at 1030.  We reverse and remand for further proceeding consistent with this opinion.

## **CONCLUSION**

[¶23]  The district court committed plain error when it accepted Ms. Lynch's guilty plea without obtaining a sufficient factual basis.  Her conviction for child abuse is reversed, and this case is remanded for further proceedings consistent with this opinion.